UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**LUKEUS MOSLEY,**           CASE NO.:

    Plaintiff,

v.

**GEORGIA-PACIFIC LLC, d/b/a
GEORGIA PACIFIC,**

    Defendant.
_____/

## COMPLAINT

Plaintiff, LUKEUS MOSLEY, hereby sues Defendants, GEORGIA PACIFIC, LLC, d/b/a GEORGIA PACIFIC, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes, 42 U.S.C. §12101 et seq., §440.205, Florida Statutes and the Family and Medical Leave Act (FMLA) of 1993, codified at 29 U.S.C. §§2612, 2624.

2. This action involves claims which are, individually, in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of costs and interest. Jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331 (federal question

jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, LUKEUS MOSLEY, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his disability. Plaintiff is a member of a protected class due to his on the job injuries and he was retaliated against because he obtained or attempted to obtain benefits under Chapter 440, Florida Statutes.

4. At all times pertinent hereto, Defendant, GEORGIA PACIFIC, LLC, has been conducting business as GEORGIA PACIFIC, LLC, under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff began his employment with Defendant in 2004 and held the position of Mechanic at the time that he was removed from Defendant's workforce as of June, 2021 after the Defendant refused to allow Plaintiff the ability to wear

protective equipment. In December 2021 and January 2022, Defendant made the final decision not to allow Plaintiff not to return to work. He is still apparently an unpaid employee of the Defendant.

7. Despite his stellar work performance during his employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his disability and his claim for compensation and benefits under Chapter 440, Florida Statutes.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Lauren Hickman in Human Resources and Utility Module Manager Crawford Baird.

9. In 2018, Inco International, Inc. installed Andritz Inc. black liquor evaporators at Defendant's Foley Plant where Plaintiff worked. However, the gas safety monitors to determine if the air quality was dangerous were not functioning correctly.

10. In 2019, Plaintiff was exposed to toxic noncombustible gases caused by the black liquor evaporators. Plaintiff and five other employees, Mechanic Danny Collins, Union Representative Howard Pickles, Mechanic John Stephens, Mechanic Steve Ellison, and Mechanic Miles Benzinger, were taken to the emergency room by Safety Coordinator Drucilla Sands as a result of the toxic exposure.

11. In 2020, Plaintiff was again exposed to toxic noncombustible gases caused by the black liquor evaporators. Plaintiff reported the incident to Defendant's safety department, Defendant's Company Nurse Christina Weed, and One-Med (Defendant's on call medical company that employees are to call when reporting an injury). No corrective action was taken.

12. On March 5, 2021, Plaintiff and two other employees were exposed to the safety hazard of chemical inhalation. Plaintiff reported the incident to Defendant's medical Safety department and to One Med. No corrective action was taken.

13. On March 8, 2021, Plaintiff was evaluated by Weed. However, no treatment was provided for Plaintiff.

14. On March 9, 2021, Plaintiff was again exposed to toxic fumes while on a fork truck. Plaintiff reported the incident to Weed. No corrective action was taken.

15. Several days later, Plaintiff walked by an open u-drain (an open sewer located below the ground with metal grating on top of it) and was exposed to toxic fumes again. Plaintiff reported the incident to Weed. No corrective action was taken.

16. Plaintiff thereafter was examined by his physician who took him out of work in order to have a CT scan.

17. Plaintiff contends that the open u-drain constantly smelled like chemicals and that employees were complaining about the smell. Rather than fixing

the problem, Defendant left a chemical sprayer available for employees to use that was supposed to mitigate and neutralize the smell of chemicals on their clothing and shoes. Several employees including Plaintiff complained to Baird that they did not want to work in the area surrounding the open u-drain due to the strong scent of chemicals that they felt was dangerous.

18. After the CT scan, on April 26, 2021, Plaintiff was diagnosed with chemical induced asthma, reactive airway disease, persistent asthma as a result of a chemical exposure at work and scarring in his upper middle lobe of his lungs, all of which are serious medical/disabling conditions of which Defendant was made aware.

19. As a result, Plaintiff filed a workers compensation claim for his work place injuries in April 2021. Plaintiff's physician also took him out of work and gave Plaintiff a tentative date to return to work on June 1, 2021, with the restriction of working in a controlled environment (no fumes). Plaintiff's return to work date was then changed by his doctor to June 23, 2021, with the restriction of working in a controlled environment (no fumes).

20. On June 24, 2021, Plaintiff smelled chemical fumes in the parking lot during a shift he was working. He reported the dangerous smells to Weed. No corrective action was taken.

21. Plaintiff smelled the fumes again while he was leaving work and again reported it to Weed. Because of the chemical smell, Plaintiff began to feel ill and began throwing up. He went to the emergency room immediately after his shift and was told to remain on medical leave pending further evaluation and treatment. Plaintiff provided his doctor's notes to Weed and went on approved medical leave.

22. On July 3, 2021, Plaintiff went to the emergency room due to his serious medical/disabling condition.

23. On October 2, 2021, Plaintiff went to the emergency room due to his serious medical condition. Plaintiff's physician released Plaintiff to return to work on October 11, 2021, with the restriction of working in a controlled environment (no fumes).

24. On October 14, 2021, Hickman told Plaintiff they could not accommodate his work restriction for working in a controlled environment and that he could not return to work.

25. In early November 2021, Plaintiff's physician added to his accommodation needs for Plaintiff to wear a Powered Air Purifying Respirator ("PAPR") and gave Plaintiff a return-to-work date of November 24, 2021.

26. On November 15, 2021, Hickman told Plaintiff he could not work with a PAPR but said that he could work with an N95 mask and requested for him to ask his doctor to change the accommodation to an N95 mask instead of a PAPR.

27. On November 17, 2021, Plaintiff asked his doctor to change his accommodation from a PAPR to an N95 mask. However, Plaintiff's doctor would not change the accommodation request because he said an N95 mask would be inadequate protection against toxic fumes.

28. On November 24, 2021, unbelievably, Plaintiff was given a 0% permanent impairment rating by the Defendant's workers compensation doctor paid by Defendant's workers' compensation insurance, and his workers compensation pay stopped. Plaintiff had approved vacation pay and began to use it because Defendant refused to allow Plaintiff to wear a PAPR while working.

29. On November 25, 2021, Plaintiff went to the emergency room due to the conditions described above.

30. On December 6, 2021, Plaintiff had a teleconference with Hickman and either Union Representative, Howard Pickles or Union Vice President Danny Faircloth. Hickman said they could not permit Plaintiff to wear a PAPR and it was an unreasonable accommodation request and was a safety concern. This was not accurate as it was a safety concern to have Plaintiff wear only the N95 and not the PAPR and Plaintiff was supposed to be working in an area in which the safety concern was nonexistent. Hickman also stated that the issue was that the PAPR would obstruct Plaintiff's vision while working which was also inaccurate.

31. On January 13, 2022, Plaintiff emailed Hickman, Supervisor Joe Kelly, Union President Howard Pickles, and Union Vice President Danny Faircloth, asking for an update about when he could return to work.

32. In January 2022 Plaintiff applied for leave under the FMLA.

33. On January 21, 2022, Plaintiff's FMLA was denied by Sedgwick (Sedgwick is the company that handled Defendant's FMLA and short-term disability requests)

34. That same day, January 21, 2022, Hickman told Plaintiff he was not permitted to return to work and said she would look into the denial of his FMLA. However, Hickman never contacted Plaintiff about his FMLA denial.

35. On January 25, 2022 Plaintiff emailed Kelly stating this email was his first step in filing a grievance against Defendant for not providing a safe workplace and for denying his benefits.

36. Plaintiff received no response and has failed to return Plaintiff to work.

37. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

8

39. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes and 42 U.S.C. §12101 et seq.

40. Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability and/or his record of having an impairment. During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

41. Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, as well as its failure to engage in the interactive process with Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

42. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

43. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff being barred from returning to work.

44. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment under the laws enumerated herein.

45. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT II
## WORKERS' COMPENSATION RETALIATION

46. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

47. This is an action against Defendant for retaliation under §440.205, Florida Statutes. At all times pertinent hereto, Defendant has been subject to Chapter 440, Florida Statutes.

48. Plaintiff was employed with Defendant when she was injured on the job. Plaintiff sought compensation and/or benefits including without limitation

medical care under Chapter 440, Florida Statutes and was retaliated against for making or attempting to make such a claim.

49. Defendant retaliated against Plaintiff because she was injured on the job and had a valid claim for compensation and benefits under Chapter 440.

50. Defendant's actions set forth above violate §440.205, Florida Statutes, which prohibits an employer, such as Defendant, from coercing, retaliating against or otherwise adversely affecting an employee who attempts to or does claim entitlement to workers' compensation benefits under the laws of the State of Florida.

51. As a direct and proximate cause of the actions set forth in part above, Plaintiff has been damaged, which damages include but are not limited to lost wages and other tangible and intangible damages and every other kind of damage allowed by law. Plaintiff has also suffered emotional pain and suffering damages and other intangible damages that continue to day. Plaintiff is also entitled to injunctive/equitable relief.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

52. Paragraphs 1 through 37 are re-alleged and are incorporated herein by reference.

53. This is an action against Defendant for retaliating against Plaintiff due to Plaintiff's use of protected leave time as set forth more fully above. This is thus both an interference and retaliation claim.

11

54. Plaintiff worked for Defendant for more than 1,250 hours in the year immediately preceding his need for leave for a serious, disabling medical condition. Defendant also employed more than 50 employees within a 70-mile radius.

55. After taking leave for serious health conditions, Defendant harassed Plaintiff and took adverse personnel actions against Plaintiff for using leave.

56. Plaintiff was denied rights and benefits conferred by the FMLA and was terminated after taking protected leave.

57. Defendant's violations of the FMLA were willful.

58. As a direct and proximate result of Defendants willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of his job. These damages have occurred in the past, are occurring at present and will continue in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's

    obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)  enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)  enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)  enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)  award Plaintiff interest where appropriate; and

(g)  grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 28th day of February 2023.

Respectfully submitted,

<u>/s/ Marie A. Mattox</u>
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF